UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PHILLIP GRINDLE, )
)
      *Plaintiff* )
)
v. ) No. 1:10-cv-516-JAW
)
MICHAEL J. ASTRUE, )
**Commissioner of Social Security,** )
)
      *Defendant* )

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff capable of returning to past relevant work as a painter and paver operator. The plaintiff argues that the administrative law judge (i) made a residual functional capacity ("RFC") determination unsupported by substantial evidence by omitting any limitations from an eye impairment and assessing limitations from a left-shoulder impairment based on raw medical evidence, (ii) erroneously determined that the plaintiff could perform past relevant work as a painter and paver operator, and (iii) wrongly refused to permit the plaintiff's counsel to examine a medical expert present at his hearing, Peter Webber, M.D. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10) at 2-10.[2] I

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff separately filed a motion to supplement the record that was granted without objection. *See* Docket Nos. 11-12.

1

need not consider the third point. On the basis of the first two points, I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of left-shoulder derangement arising, at the earliest, in or about January 2009, status-post arthroscopic surgery with excellent recovery, Finding 3, Record at 10; that he had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he was limited to occasional reaching above the shoulder with his non-dominant left arm, Finding 5, *id*. at 12; that he was capable of performing his past relevant work, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 14; and that he, therefore, was not disabled from October 1, 2006, his alleged date of onset of disability, through the date of the decision, August 25, 2010, Finding 7, *id*. at 15.[3] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

---

[3] The plaintiff sought a closed period of disability benefits for the period from October 1, 2006, through April 1, 2010. *See* Record at 7. He is insured for purposes of SSD benefits through March 31, 2013. *See* Finding 1, *id*. at 10.

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. RFC Determination

To begin, I agree with the plaintiff that the administrative law judge's RFC determination is unsupported by substantial evidence.

## 1. Eye Impairment

With respect to the plaintiff's eye impairment, the record reveals that he was diagnosed on October 4, 2005, with nuclear sclerotic lens changes, although he then still had "good visual acuity." *See* Record at 192-93, 199-200. On June 20, 2006, he was diagnosed with cataracts in each eye, causing diminished visual acuity. *See id.* at 197-98. His vision progressively deteriorated until he underwent successful cataract removal surgery in June 2009. *See, e.g., id.* at 203 (in July 2008, plaintiff had progressive cataracts that reduced his best corrected vision to right eye 20/200-1, left eye 20/50-1), 230 (plaintiff found, during May 5, 2009, Disability Determination Services ("DDS") consulting examination by Marc L. Braithwaite, O.D., to have best corrected visual acuity of hand motion in the right eye and 20/60 in the left eye; he was diagnosed with severe cataracts in each eye and underwent cataract extraction with intraocular lens implant on the right eye on June 6, 2009, and the left eye on June 22, 2009), 229 (when seen on June 29, 2009, plaintiff had uncorrected visual acuity of 20/25-1 in the right eye and 20/25 in the left eye and was scheduled to return for a final refraction for prescription glasses), 230 (when seen on July 13, 2009, plaintiff had best corrected visual acuity of 20/20 in each eye, with an add of +2.25 for near work, and had "excellent ocular health").

There are two expert RFC opinions of record, one by DDS nonexamining consultant Donald Trumbull, M.D., dated September 2, 2008, *see id.* at 204-11, and one by DDS nonexamining consultant Richard T. Chamberlin, M.D., dated July 7, 2009, *see id.* at 214-21. Both Drs. Trumbull and Chamberlin deemed the eye impairment severe. *See id.* Dr. Trumbull found that, as a result of that impairment, the plaintiff could only occasionally climb ladders/ropes/scaffolds, had limited distance far acuity, depth perception, and field of vision, with expected difficulty with depth perception and right lateral peripheral vision, needed to wear

safety glasses when grinding, sanding, *etc*., and needed to avoid hazards in the form of areas of debris, moving machinery/vehicles in which full binocular vision and visual fields are essential to safety, and unprotected heights. *See id*. at 206-08. Even post-surgery, as of July 7, 2009, Dr. Chamberlin found that the plaintiff could only occasionally climb ramps and stairs, never climb ladders/ropes/scaffolds, only occasionally balance, had limited distance far acuity, depth perception, and field of vision, could occasionally use his eyes for activities that did not require depth perception, and needed to avoid work on moving machinery parts. *See id*. at 216-18.

In addition, the plaintiff's treating optometrist, Michael H. Gonyea, O.D., submitted a letter dated January 27, 2009, stating:

> [The plaintiff] has progressive cataracts which had reduced his best corrected vision to right eye 20/200-1, left eye 20/50-1 in July, 2008. Cataract surgery will resolve this condition but [the plaintiff] states that he can't afford surgery. Without surgery, [his] acuity wi[ll] continue to decline to the point of legal blindness.
>
> Perhaps there is some aid program which will pay for his surgery and resolve this condition, in which case he will be able to resume his employment.

*Id*. at 212.

Dr. Webber, an independent medical expert, was present at the plaintiff's hearing, but the administrative law judge chose not to call him as a witness or to permit the plaintiff's counsel to question him, reasoning that he did not require his assistance to understand the medical issues in the claim. *See id*. at 7, 46.

The administrative law judge found the plaintiff's eye impairment nonsevere on the bases that "it has no more than a minimal effect on his ability to perform basic work-related activity on a regular and continuing basis, was easily corrected with surgery, which the claimant did not pursue, and/or does not satisfy the 12-month durational requirement." *Id*. at 10. That finding is unsupported by substantial evidence of record.

5

To the extent that the administrative law judge found no more than a minimal effect on the plaintiff's ability to perform basic work-related activity on a regular and continuing basis, that finding is unsupported by any medical expert opinion of record. Drs. Trumbull, Chamberlin, and Gonyea all found the cataract condition to impose more than minimal work-related limitations. *See id*. at 206-08, 212, 216-18. While, as the administrative law judge observed, *see id*. at 14, Dr. Trumbull rendered his opinion before the plaintiff's cataract surgery, and Dr. Chamberlin rendered his opinion shortly after the surgery but before the July 2009 visit in which Dr. Braithwaite pronounced the plaintiff in "excellent ocular health" with a best-corrected acuity of 20/20 in each eye, that does not undercut the validity of their opinions for the period assessed.

At oral argument, counsel for the commissioner contended that the administrative law judge supportably deemed the condition nonsevere for the period from October 1, 2006, through July 15, 2008, on grounds that the (i) the plaintiff's vision in June 2006 was 20/40 in his right eye and 20/20 in his left, (ii) the plaintiff submitted no objective medical documentation of his vision for the period from June 21, 2006, through July 15, 2008, and (iii) the plaintiff had engaged during that period in activities inconsistent with a severe impairment, such as raking blueberries, driving, and pulling a deer up onto a rack. *See id.* at 11.

This argument is facially appealing but ultimately unpersuasive for several reasons. First, the plaintiff's best *corrected vision* in his right eye in June 2006 was 20/40. *See id*. at 203. While Dr. Gonyea had noted, following a 2005 visit, that the plaintiff still had "good visual acuity" despite nuclear sclerotic changes, *see id*. at 193, he noted, in June 2006, that the plaintiff had mixed cataracts and "↓ VA[,]" or diminished visual acuity, for which he recommended a surgical consultation, *see id*. at 198. It is not self-evident on this record that best corrected vision of 20/40 in one eye would have no more than a minimal effect on an individual's ability to work,

6

and there is no medical expert evidence of record so indicating.[4] Second, while the plaintiff's capacity to engage in the activities in question, driving a car, pulling a deer up onto a rack, and raking blueberries, might reasonably cast doubt on whether his condition during those times was *disabling*, it does not call into question whether he met his *de minimis* burden of showing that his impairment had more than a minimal effect on his ability to work. Third, Dr. Gonyea described the plaintiff's eye impairment as "progressive[,]" *id.* at 203, suggesting that it did not suddenly significantly worsen in July 2008 but, rather, gradually worsened in the period between 2006 and 2008. While, as counsel for the commissioner observed, a gap in treatment is itself relevant evidence, *see, e.g., Irlanda Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991); *Perez Torres v. Secretary of Health & Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989), in the circumstances of this case it is not substantial evidence of the nonseverity of the eye impairment.

To the extent that the administrative law judge considered the impairment nonsevere because of the plaintiff's failure to obtain corrective surgery, he erred. That issue is considered if a claimant is found disabled, rather than at Step 2. *See, e.g.,* Social Security Ruling 82-59, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-59"), at 793 ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."); *Ramsey v. Barnhart*, No. 00-15-B-W, 2004 WL 2862168, at *4 (D. Me. Dec. 13, 2004) (rec. dec. *aff'd* Jan. 12, 2005)

---

[4] At oral argument, the plaintiff's counsel contended that his client's vision was 20/80, rather than 20/40, in his right eye in June 2006. However, this appears to have been his *uncorrected* vision in that eye. *See* Record at 197, 203, 221.

7

("The [commissioner's] regulations do not explicitly authorize[] an ALJ to consider the ease with which an impairment could be cured when determining whether that impairment is 'severe.' Rather, a separate rule, 20 C.F.R. § 404.1530(a) (1983), states that the [commissioner] will not award benefits unless the claimant 'follow[s] treatment prescribed by his physician *if this treatment can restore* [*claimant's*] *ability to work.*'") (citation and internal quotation marks omitted) (emphasis in original).[5]

To the extent that the administrative law judge found the eye impairment not to satisfy the duration requirement, he erred again. The commissioner's regulations provide, in relevant part: "Unless [a claimant's] *impairment* is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509 (emphasis added). The plaintiff's cataracts were diagnosed no later than June 20, 2006. *See* Record at 197-98. The cataract impairment persisted until at least July 2009. It thus clearly met the duration requirement.

The Step 2 finding that the plaintiff had no severe eye impairment for a continuous period of at least one year hence is unsupported by substantial evidence of record.

---

[5] There has been no material change in the quoted text of 20 C.F.R. § 404.1530(a). At oral argument, counsel for the commissioner contended that any error in taking into consideration, at Step 2, the plaintiff's failure to obtain treatment was harmless because the plaintiff had not shown that the error would have affected the Step 4 analysis of his functional restrictions. He reasoned that, had the eye impairment been deemed severe, the plaintiff would not have been able to show at Step 4 that, prior to his 2009 cataract surgery, he was unable to afford treatment. He cited *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003), and *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999), for the proposition that a claimant must make a showing that, despite forgoing nonessential purchases and/or attempting to obtain free or low-cost treatment, the claimant was unable to obtain such treatment. Nonetheless, both *Osborne* and *Riggins* are Step 5 cases. *See Osborne*, 316 F.3d at 811; *Riggins*, 177 F.2d at 692. I conclude, as discussed below, that the administrative law judge's failure to find a severe eye impairment did affect his assessment of the plaintiff's functional restrictions and the validity of his Step 4 finding that the plaintiff could return to past relevant work.

## 2. Shoulder Impairment

As the plaintiff next complains, *see* Statement of Errors at 3-4, the administrative law judge deemed him at Step 2 to suffer from a severe shoulder impairment, but improperly assessed the resulting limitations based on his own interpretation of the raw medical evidence.

In the absence of reliance on an expert's opinion, an administrative law judge, as a layperson, may make a finding of a claimant's RFC only to the extent that such a judgment can be made as a matter of common sense. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

Neither Dr. Trumbull nor Dr. Chamberlin had the benefit of medical records documenting the plaintiff's left shoulder impairment. *See* Record at 211, 221. The plaintiff first complained on June 11, 2009, to S. Craige Williamson, M.D., that he had awoken approximately six months previously with marked pain in the left shoulder that was not improved. *See id*. at 249. He complained of pain at night as well as pain with any lifting activities. *See id*. Dr. Williamson found intermittent paresthesias and numbness in all digits on the left hand. *See id.* The plaintiff eventually was diagnosed with a partial-thickness rotator cuff tear, *see id*. at 245-47, for which he underwent surgery in January 2010, *see id*. at 260-61. On April 1, 2010, he told Dr. Williamson that he was doing exceptionally well and had only minimal complaints of pain. *See id*. at 254.

The administrative law judge did not explain how he arrived at his finding that the shoulder impairment imposed one limitation, a limitation to no more than occasional reaching above the shoulder with the left arm. *See id*. at 13-14. The plaintiff had complained to Dr.

Williamson of pain with *any* lifting activities. *See id*. at 249. It was not reasonably apparent to a layperson such as the administrative law judge that the plaintiff was capable of lifting even occasionally above the shoulder, that he had no impairments whatsoever when lifting below the shoulder, or that his shoulder impairment permitted him to perform medium exertional level work, defined, in relevant part, as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).[6]

Hence, the Step 4 RFC finding was unsupported by substantial evidence of record.

## B. Past Relevant Work Determination

Without elaboration, the administrative law judge found that the plaintiff retained the RFC to perform past relevant work as a painter or a paver operator, both as he actually performed those jobs and as they generally are performed in the national economy. *See* Record at 14-15.

The plaintiff argued, *inter alia*, that the administrative law judge's reliance on the paver operator job was misplaced because the plaintiff could not have performed certain aspects of that so-called "composite" job even with the assessed RFC. *See* Statement of Errors at 5-6. At oral argument, counsel for the commissioner conceded that point, relying solely on the plaintiff's capacity to perform the painter job.

---

[6] At oral argument, counsel for the commissioner contended that the administrative law judge gave the plaintiff the "benefit of the doubt" in finding functional limitations despite an absence of proof on the plaintiff's part and that, in any event, the condition did not meet the one-year durational requirement because it was first diagnosed in June 2009 and cured by April 2010. With respect to the first point, this court has found that an administrative law judge has given a claimant the "benefit of the doubt" in circumstances in which his or her RFC determination is not supported by expert medical evidence but is more restrictive, and hence more claimant-friendly, than those of the medical experts. *See, e.g., Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *6-*7 (D. Me. July 7, 2011) (rec. dec., *aff'd* July 29, 2011). In this case, the administrative law judge obtained no expert assistance but, rather, interpreted the raw medical evidence, arguably failing to reflect the full scope of restrictions resulting from the shoulder impairment. Hence, he cannot fairly be said to have given the plaintiff the "benefit of the doubt." With respect to the second point, the administrative law judge implicitly found that the plaintiff's shoulder condition met the durational requirement, the plaintiff having reported to his treating doctor in June 2009 that he had been experiencing symptoms for six months. *See* Record at 11, 249.

10

Nonetheless, he also conceded that, to the extent that the court determined that the administrative law judge erred in failing to include the visual restrictions assessed by Dr. Chamberlin, the plaintiff would not have been able to return to the painter job, as well, in view of Dr. Chamberlin's finding that the plaintiff could never climb ladders, ropes, or scaffolds. *See* Record at 216. The limitations found by both Drs. Trumbull and Chamberlin on distance far acuity, *see id*. at 207, 217, also would preclude the job of painter, which is described as requiring occasional distance far acuity, *see* Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 840.381-010.

Because (i) the commissioner concedes that the administrative law judge's reliance on the job of paver operator was misplaced, (ii) I have determined that the administrative law judge erred in finding the eye impairment nonsevere at Step 2 and omitting resulting restrictions at Step 4, and (iii) the only two expert RFC opinions of record find restrictions resulting from the eye impairment that would have precluded the performance of the job of painter, the Step 4 finding of ability to return to past relevant work is unsupported by substantial evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge